**FILED**
CLERK, U.S. DISTRICT COURT
5/29/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: RAM   DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

March 2024 Grand Jury

| UNITED STATES OF AMERICA, | ED CR No. 24-00140-SB |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1951(a): Conspiracy to Commit Extortion and Attempted Extortion; 18 U.S.C. § 1959(a)(1): Violent Crime in Aid of Racketeering; 18 U.S.C. § 1201(a)(1): Kidnapping; 18 U.S.C. §§ 981(a)(1)(C), 924(d) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| LUIS RAMIREZ,<br>  aka "Lil Man,"<br>JOSE JONATHAN RUBALCABA ALARCON,<br>  aka "Demon," and<br>GILBERT REY MARTINEZ,<br>  aka "Bams,"<br>  aka "Bam Bam," | |
| Defendants. | |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1951(a)]

[ALL DEFENDANTS]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.  Gas & Co. operated a gasoline station and convenience store located at 8790 Mission Boulevard in Jurupa Valley in Riverside County.

2.  Westside Riva (hereinafter referred to as "WSR") members operated a clothing store called Rubidoux Fashion located at 5582 Mission Boulevard in Riverside.

3.  The back rooms of Rubidoux Fashion functioned as a meeting area for WSR members and associates.

4.  Defendant LUIS RAMIREZ, also known as ("aka") "Lil Man," was an inmate at Solano State Prison, a California Department of Corrections and Rehabilitation facility, located in Vacaville, California.

B.  OBJECTS OF THE CONSPIRACY

Beginning on an unknown date, but no later than September 7, 2023, and continuing until on or about October 1, 2023, in Riverside County, within the Central District of California, and elsewhere, defendants RAMIREZ, JOSE JONATHAN RUBALCABA ALARCON, aka "Demon," GILBERT REY MARTINEZ, aka "Bams," aka "Bam Bam," Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, and others known and unknown to the Grand Jury, conspired with each other to knowingly and intentionally interfere with commerce by extortion, in violation of Title 18, United States Code, Section 1951(a).

C.  MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1.  From prison, and using contraband cell phones, defendant RAMIREZ would communicate with members of the Westside Riva criminal street gang (hereinafter referred to as "WSR") and direct gang members to extort business operating within the territory that WSR claimed as its own.

2

2. At the direction of defendant RAMIREZ, defendant RUBALCABA, Co-Conspirator 1, Co-Conspirator 2, and Co-Conspirator 3 would identify local business to target for extortion.

3. Defendant RUBALCABA, Co-Conspirator 1, Co-Conspirator 2, and Co-Conspirator 3 would visit local businesses, and induce fear in the business operators by identifying themselves as members of WSR, and by demanding the payment of taxes for protection and for the privilege of operating within Westside Riva territory.

4. Defendant RUBALCABA and other co-conspirators would collect extortion payments from local business operators and would use Person 1 to help collect and store extortionate payments.

5. Defendant RUBALCABA would keep a portion of those extortion payments for himself and would send a portion of the extortion payments to defendant RAMIREZ through an electronic transfer of funds to defendant RAMIREZ's prison inmate financial account.

6. Defendants RAMIREZ, RUBALCABA, and MARTINEZ would use violence, threats of violence, and imprisonment to obtain extortion payments.

D. OVERT ACTS

In furtherance of the conspiracy, and to accomplish the object of the conspiracy, on or about the following dates, defendants RAMIREZ, RUBALCABA, Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1: On September 7, 2023, defendant RUBALCABA and Co-Conspirator 1 drove to Gas & Co. in a black Cadillac CTS.

<u>Overt Act No. 2</u>:  On September 7, 2023, defendant RUBALCABA and Co-Conspirator 1 went into the Gas & Co. and spoke with a cashier, demanding to speak with the owner of Gas & Co.

<u>Overt Act No. 3</u>:  On September 7, 2023, after being connected with the owner of Gas & Co. by telephone, defendant RUBALCABA told the owner that he would need to pay taxes to WSR because Gas & Co. was operating online gambling games within WSR-controlled territory.

<u>Overt Act No. 4</u>:  On September 7, 2023, when the owner of Gas & Co. told defendant RUBALCABA that Gas & Co. would not be paying taxes to WSR, defendant RUBALCABA told the owner of Gas & Co. that the owner would have to speak with his boss, referring to defendant RAMIREZ.

<u>Overt Act No. 5</u>:  On September 8, 2023, defendant RUBALCABA and Co-Conspirator 2 drove to Gas & Co. in a black Honda Civic.

<u>Overt Act No. 6</u>:  On September 8, 2023, defendant RUBALCABA and Co-Conspirator 2 went into Gas & Co. and defendant RUBALCABA, while holding a cell phone in his hand, told a cashier that defendant RUBALCABA's boss was on the phone and that the boss wanted to talk with the cashier's boss.

<u>Overt Act No. 7</u>:  On September 8, 2023, defendant RAMIREZ spoke to the Gas & Co. cashier through the cell phone that defendant RUBALCABA had brought into Gas & Co.

<u>Overt Act No. 8</u>:  On September 8, 2023, defendant RUBALCABA said to defendant RAMIREZ and the cashier that the Gas & Co. owner was trying to play stupid with us.

<u>Overt Act No. 9</u>:  On September 8, 2023, Person 1 possessed $7,247 in Person 1's bag, which was later seized by law enforcement officers who had stopped the black Cadillac CTS in which Person 1 was

riding along with Co-Conspirator 1, Co-Conspirator 3, and another person.

   Overt Act No. 10:  On September 22, 2023, defendant RAMIREZ told Person 1 that Person 1 had to get him the $7,247 that had been seized by law enforcement from Person 1's bag.

   Overt Act No. 11:  On September 27, 2023, defendants RUBALCABA and MARTINEZ, at defendant RAMIREZ's direction, abducted Person 1 by taking Person 1 against Person 1's will, and confining Person 1 within Rubidoux Fashion.

## COUNTS TWO & THREE

[18 U.S.C. § 1951(a), 2(a)]

[DEFENDANTS RAMIREZ & RUBALCABA]

On or about the following dates, in Riverside County, within the Central District of California, and elsewhere, defendants LUIS RAMIREZ, also known as ("aka") "Lil Man," and JOSE JONATHAN RUBALCABA ALARCON, aka "Demon," and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly and with intent to obtain property, attempted to obstruct, delay, and affect interstate commerce by committing extortion, in that defendants RAMIREZ and RUBALCABA attempted to obtain property from Person 2, the owner of Gas & Co. located at 8790 Mission Boulevard in Jurupa Valley in Riverside County (Gas & Co.), by means of threatened force, violence, and fear of injury, immediate and future, to Person 2, the owner of Gas & Co. business, Person 3, an employee at Gas & Co. business, and the Gas & Co. business:

| COUNT | DATE |
|---|---|
| TWO | September 7, 2023 |
| THREE | September 8, 2023 |

COUNT FOUR

[18 U.S.C. § 1959(a)(1), 2(a)]

[ALL DEFENDANTS]

A.  GENERAL ALLEGATION

At times relevant to this Indictment:

1.  THE ENTERPRISE

1.  Defendants LUIS RAMIREZ, also known as ("aka") "Lil Man," ("RAMIREZ"), JOSE JONATHAN RUBALCABA ALARCON, aka "Demon" ("RUBALCABA"), GILBERT REY MARTINEZ, aka "Bams," aka "Bam Bam" ("MARTINEZ"), and others known and unknown to the Grand Jury, were members and associates of the Westside Riva street gang (hereinafter referred to as "WSR"), a criminal organization operating in and around Riverside, California, whose members and associates engaged in, among other things, numerous acts of violence and other crimes, including acts involving murder, robbery, extortion, and trafficking in narcotics.

2.  WSR is a multi-generational gang founded in Jurupa Valley, California in the late 1950s and early 1960s.  The gang began as a small group of individuals who lived in the Jurupa Valley area.  WSR was primarily involved in street robberies, drug sales, and fighting with rival gang members in "turf battles."  Through the years, the gang dramatically increased its membership by absorbing smaller, less powerful local gangs.

3.  WSR is primarily a Latino street gang.  WSR gang members were involved with various violent crimes including acts involving murder, assault, robbery, and extortion, as well as narcotics trafficking, burglary, vehicle theft, illegal gambling, and money

laundering.  Associates of the WSR gang were aware of, participated in, and benefited from these criminal activities.

4. While WSR's "territory" has changed over time, it historically has been contained within the approximate area bordered by Highway 60 to the North and East, the Santa Ana River to the South and East, and Pedley Road to the West.  Based on the strength of its numbers and its reputation for violence, WSR controlled drug trafficking and other illegal activities within its territory, including the area in which the kidnapping charged in Paragraph 10 below occurred.

5. WSR was controlled by members and associates of the "Mexican Mafia," or "La Eme."  The Mexican Mafia was an organized group of individuals who controlled much of the drug distribution and other criminal activities within California State Prisons, local county jails, and some federal prisons. Members and associates of WSR regularly paid extortionate taxes to Mexican Mafia members who oversaw the gang.  The primary task of WSR leadership on the streets is to collect extortionate taxes from drug dealers, gambling establishments, smoke shops and other illicit or near-illicit businesses operating within WSR's territory, and to punish individuals who fail to pay the requisite extortionate taxes.

6. To provide a revenue source, increase and maintain position within WSR, and instill a climate of fear within WSR's territory, WSR members and associates extorted drug dealers, gambling establishments, smoke shops and other illicit or near-illicit businesses operating within WSR's territory and committed acts of theft and robbery against individuals who refused to pay extortionate taxes.  WSR members paid a portion of the extortion proceeds up to

the Mexican Mafia members and associates. The appropriate amount of such a payment was typically one third of the take. These payments to the Mexican Mafia helped ensure the assistance of the Mexican Mafia, should members or associates of WSR require it.

7. WSR, including its leaders, members, and associates, constituted an enterprise as defined by Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate and foreign commerce. WSR constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2. <u>PURPOSES OF THE ENTERPRISE</u>

8. The purposes of the WSR enterprise included, but were not limited to, the following:

    a. Enriching members and associates of WSR through, among other things, the control of, and participation in, the trafficking of controlled substances in WSR territory and elsewhere, the operation of illegal gambling establishments, known as casitas, the collection of extortionate taxes, and commission of robberies;

    b. Maintaining control over all WSR territory;

    c. Preserving, protecting, and expanding the power of WSR using intimidation, violence, and threats of violence;

    d. Violently retaliating against rival gang members or perceived outsiders who challenged WSR authority or attempted to encroach on WSR territory; and

    e. Exposing and punishing WSR members and associates who were perceived to have violated WSR codes of conduct.

3. THE MEANS AND METHODS OF THE ENTERPRISE

9. The means and methods by which the members and associates of WSR conducted and participated in the conduct of the affairs of the WSR criminal enterprise included the following:

a. Members and associates of WSR committed, attempted to commit, conspired to commit, and threatened to commit acts of violence, including assault, kidnapping, murder and robbery, to preserve, protect, and expand WSR's criminal operations;

b. Members and associates of WSR promoted a climate of fear through acts of violence and threats to commit acts of violence;

c. Leaders of WSR disseminated rules and orders to be followed by all participants in the WSR enterprise; and

d. Members and associates of WSR engaged in the trafficking of controlled substances, committed robberies, operated illicit gambling establishments, and collected extortionate taxes to generate revenue for the enterprise.

10. The WSR enterprise, through its members, leaders, and associates engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is acts indictable under Title 18, United States Code, Section 1951 (relating to interference with commerce by robbery or extortion).

B. VIOLENT CRIME IN AID OF RACKETEERING

11. Beginning on an unknown date, and continuing to on or about October 1, 2023, in Riverside County, within the Central District of California, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from WSR, and for the purpose of gaining entrance to and maintaining and increasing position in WSR, an enterprise engaged in racketeering

activity, defendants RAMIREZ, RUBALCABA, and MARTINEZ, and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly, willfully and unlawfully kidnapped Person 1, in violation of California Penal Code Sections 207 and 209 and 31.

COUNT FIVE

[18 U.S.C. §§ 1201(a)(1), 2(a)]

[ALL DEFENDANTS]

Beginning on an unknown date and continuing to on or about October 1, 2023, in Riverside County, within the Central District of California, and elsewhere, defendants LUIS RAMIREZ, also known as ("aka") "Lil Man," JOSE JONATHAN RUBALCABA ALARCON, aka "Demon," and GILBERT REY MARTINEZ, aka "Bams," aka "Bam Bam," and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly, willfully, and unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, and carried away Person 1, and held Person 1 for ransom and reward and otherwise, and in committing and in furtherance of the commission of the offense, used a means, facility, and instrumentality of interstate and foreign commerce, namely, cell phones and web-based video surveillance platforms.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts One through Three, or Five, of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

   (a) All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to any of the offenses; and

   (b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 981(a)(1)(C), 924(d) and 28 U.S.C. § 2461(c)]

4. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 924(d), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in Count Four of this Indictment.

5. Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses;

(b) All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(c) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

6. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/
Foreperson

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

SEAN D. PETERSON
Assistant United States Attorney
Chief, Riverside Branch Office

PETER DAHLQUIST
ERIN KISS
Assistant United States Attorneys
Riverside Branch Office